# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MORGAN HALL ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | NO._____ |
| ) | |
| STYL RESIDENTIAL LLC, and ) | |
| RICHARD PRITCHETT ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## COMPLAINT

Plaintiff Morgan Hall ("Plaintiff" or "Ms. Hall") submits the following Complaint against Corporate Defendant Styl Residential LLC ("Styl" or "Defendant Employer") and individual Defendant Richard Pritchett ("Pritchett").

## JURISDICTION AND VENUE

1. This is a lawsuit for damages arising from sexual harassment and retaliation toward the Plaintiff, former employee of Defendant Employer, brought pursuant to 42 U.S.C. § 2000 (hereinafter "Title VII") and Plaintiff seeks to recover unpaid work time, unpaid overtime, liquidated damages and attorney's fees and costs for all hours worked in excess of 40 hours in a single workweek which lack of payments are alleged violations of the Fair Labor Standards Act, 29 U.S.C. Secs. 203, et. seq. (hereafter "FLSA").

2. Ms. Hall's claims present federal questions over which this Court has jurisdiction under 28 U.S.C. §§ 1331 Title VII and the FLSA. Further, this Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

3. This Court is an appropriate venue for all of Ms. Hall's claims under 28 U.S.C. § 1391(b) and (c) because all the parties reside within the Northern District of Georgia, and most events giving rise to Ms. Hall's claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

4. Ms. Hall timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto and incorporated herein is "Exhibit A".

5. The EEOC issued Ms. Hall her notice of right to sue. Attached hereto and incorporated herein is "Exhibit B".

6. Plaintiff has exhausted her administrative remedies prerequisite to filing this suit pursuant to Title VII.

7. Plaintiff has timely commenced this case within 90 days of her receipt of the right to sue.

## PARTIES

8. Plaintiff is a citizen of the United States and a resident of the state of Georgia.

9. Plaintiff is female.

10. Plaintiff is a member of a protected class under Title VII.

11. Plaintiff resides in the Northern District of Georgia and subjects herself to this Court's jurisdiction.

12. Plaintiff was an employee of Defendant Employer at all times material to this Complaint.

13. Defendant Employer is or was a for-profit corporation licensed to do business in Georgia.

14. Defendant Employer transacts business in the Northern District of Georgia.

15. Defendant Employer is subject to this Court's jurisdiction and may be served with process through their registered agents for service of process or other legal means.

16. Pritchett was a Supervisor over Plaintiff.

17. Upon information and belief, Mr. Pritchett resides in the northern district of Georgia.

18. Mr. Pritchett may be served with process at Defendant Employer's address.

## FACTUAL ALLIGATIONS

### FLSA

19. Plaintiff alleges violations of the FLSA in that (1) she was not paid for all time worked, (2) she was not paid overtime for work performed in excess of 40 hours in a single work week during parts of her employment, and alleges that these violations of the FLSA occurred throughout Georgia and her home office within the geographic boundary of the United States District Court, Northern District of Georgia, Atlanta Division.

20. Even though Plaintiff and worked more than forty hours in some weeks, Defendant failed to pay Plaintiff for all the time that she worked.

21. Plaintiff was not exempt under the executive, administrative or professional exemptions of the FLSA, in part, because she was not paid on a salary basis.

22. Plaintiff was not exempt from the overtime requirements of the FLSA under the executive exemption because Plaintiff's primary duty was not managing the enterprise or managing a customarily recognized department or subdivision of the enterprise.

23. Plaintiff was not exempt from the overtime requirements of the FLSA under the executive exemption because Plaintiff did not customarily and regularly direct the work of at least two other full-time employees or the equivalent.

24. Plaintiff was not exempt from the overtime requirements of the FLSA under the executive exemption because Plaintiff did not have the authority to hire or fire other employees or have her suggestions and recommendations regarding the hiring, firing, advancement, promotion, or any other change in status of other employees be given particular weight.

25. Plaintiff was not required to maintain any form of professional license by Defendant. Plaintiff's primary duty is not to exercise discretion and independent judgment of a professional as defined by the FLSA or U.S. Department of Labor Regulations.

26. Plaintiff was not exempt from the overtime requirement of the FLSA as a learned professional.

27. Plaintiff's primary duty is not the performance of office or non-manual work directly related to the management or general business operations of the employer or the employers' customers.

28. Plaintiff was not exempt from the overtime requirements of the FLSA under the Administrative Exemption.

29. At all times material to this Complaint, Defendant Employer employed Plaintiff.

30. Defendant Employer is subject to enterprise coverage under the FLSA.

31. Styl had annual revenues in excess of $500,000.00 between 2018 and 2020.

32. During Plaintiff's employment, Defendant Employer was engaged in interstate commerce as they designed and managed apartment complexes throughout the County. Further Defendant Employer used interstate data networks which were instrumentalities of interstate commerce because they were used for sending and receiving electronic communications in interstate commerce.

33. Defendant Employer is also subject to individual coverage under the FLSA.

34. During Plaintiff's employment with Defendant Employer Plaintiff worked more than 40 hours per week almost every week she was employed by Defendant Employer.

35. Plaintiff typically worked at least 10 hours per day. She often worked 6+ days a week, much of this time off the clock.

36. Plaintiff was not paid for all her hours worked and was not paid overtime for all the hours she worked in excess of 40 hours per week while she was off the clock.

37. Ms. Hall's employment with Defendant began on or about December 16, 2019.

38. Ms. Hall was hired by Defendant Employer as a leasing agent at an apartment complex called "Flats at Perimeter Place".

39. As an alleged perk to Ms. Hall's job, she resided at the complex with a 20% discount on rent.

40. This resulted in Plaintiff having to often cover for employees, and being the person whom residents went to for questions and concerns, etc.

41. Throughout her employment, Plaintiff frequently worked overtime in office, over the phone and from her home.

42. Plaintiff worked when she was scheduled, but also worked when she wasn't on the schedule.

43. Further, her supervisor/manager, Mr. Burton, often ordered Plaintiff to work later that her scheduled time and he would often change her schedule orally, but not on paper.

44. For example, Plaintiff was on-call and available when asked to due to the following:

- Coworkers repeatedly leaving work early

- Coworkers failing to show up to their scheduled shifts

- Coworkers failing to do the job assigned to them

- Assisting numerous temps lacking property knowledge

- Assisting vendors visiting the property outside of work hours

- Sending required daily reports to Corporate, Investors, Upper Management.

## SEXUAL HARASSMENT

45.  Defendant Employer employed fifteen or more employees for each working day in each of twenty or more calendar weeks throughout 2018 and 2019, and 2020.

46.  Defendant Employer is subject to the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended.

47.  Plaintiff's manager, Ben Burton was the Director of Property Management.

48.  Mr. Burton repeatedly made sexual advances and requests for sexual favors during Plaintiff's employment.

49.  Plaintiff was constantly coerced by his persistence and frustration when she rejected or ignored his advances.

50. Mr. Burton however would not take no for an answer. He frequently made plans and promises to promote Plaintiff, increase her pay, and/or provide other work-related benefits in exchange for sexual favors.

51. Mr. Burton's sexual harassment began around January 13, 2020 and continued throughout her employment.

52. Within these months, Plaintiff informed him numerous times that she wasn't interested, didn't like him like that, etc.

53. Shortly after Plaintiff started, she was scheduled for an upcoming STYL and RealPage training.

54. Plaintiff had been scheduled to attend this training the week of January 27, 2020.

55. Plaintiff was scheduled to attend the first 2-3 days of training.

56. The first day covered STYL - the company's mission, successes, upcoming changes, expectations, system tips, etc..

57. Plaintiff was also scheduled for Real Page training; this day was necessary as it covered software system training, shortcuts, tips, etc. that would be essential to the performance of Plaintiff's job.

58. However, upon leaving the first day of STYL training, Mr. Burton told Plaintiff that she was done with training.

59. He mentioned that the additional days she had been scheduled for training she no longer should attend.

60. Mr. Burton made this decision because he wanted Plaintiff to be dependent on him and realize that she would be unable to keep her job if he was unhappy with her rejection of his sexual advances.

61. Plaintiff was also sexually harassed by her Regional Property Manager, Individual Defendant Richard Pritchett.

62. Pritchett constantly leered at her, studiously watched her on camera, and made inappropriate sexual comments, and mentioned giving her a raise on more than one occasion insinuating that the raise would be dependent on how she responded to his/Mr. Burton's advances.

63. Pritchett's sexual harassment included but was not limited to the following:

64. Pritchett mentioned that Plaintiff was "getting thick", in reference to a dress she had on that day, and that he wanted to see her looking sexier.

65. He asked for not only a picture of Plaintiff, but also of her daughter's babysitter who came to the office on March 20, 2020.

66. He asked Plaintiff to attend a fraternity party with him in Stone Mountain.

67. He made sexual remarks to Plaintiff in reference to her daughter's babysitter.

68. He frequently referred to himself as "Daddy Rick".

69. He would frequently attempt to hug Plaintiff.

70. Plaintiff told Pritchett that she did not want to hug him, but he would hug her anyway and she would have to push him off of her.

71. When Mr. Pritchett began working on-site, he worked out of a middle office which was in direct view of Plaintiff's desk.

72. Plaintiff frequently noticed Mr. Pritchett staring at her.

73. In a meeting in February, 2020 Mr. Pritchett rolled his office chair up close enough for his knees to touch Plaintiff's knees.  While doing so he began a discussion with Plaintiff about what he wanted to see out of her to get a promotion.

74. Shortly after the departure of the first Property Manager, Jim Stabler, Mr. Pritchett was temporarily the on-site Manager (late February – early May).

75. When Plaintiff asked about the status of hiring a new manager, he frequently mentioned applicants' salary requirements; stating three managers were not considered in order to keep room in the budget for Plaintiff's raise depending on how she got along with everyone at STYL.  Implying that she needed to be more open to his advances if she wanted a raise.

76. Towards the end of March, Mr. Pritchett stated that due to the pandemic, management's previously mentioned promotion would come later, but that she could still expect a raise soon if….

77. One time when confronted about the status of said promotion/raise, Mr. Pritchett went as far as to request pictures of the Plaintiff.

78. Shortly after the start of Covid-19, Plaintiff was asked by Management to record apartment videos for STYL's YouTube channel and virtual tours.

79. These virtual tours had checklists and were to be recorded on iMovie. The company iPad did not produce quality videos, so Plaintiff was told to record these videos on her iPhone.

80. Once complete, the videos were to be approved by Management prior to being posted.

81. Upon information and belief, Mr. Pritchett viewed many of Plaintiff's private pictures in addition to her videos shot for STYL. Specifically, Mr. Pritchett viewed nude pictures of the Plaintiff stored on her phone.

82. Mr. Pritchett spoke about going to strip clubs, made sexual remarks about Plaintiff's body and invaded her personal space on numerous occasions.

## COUNT I
## SEXUAL HARASSMENT/SEX BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

83. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

84. This claim is asserted solely against Defendant Employer.

85. Ms. Hall was subjected to sexual harassment and sexual assault by Defendant Employer.

86. The above conduct by the Plaintiff's managers was unwelcome, offensive, and constitutes sexual harassment of Ms. Hall.

87. The sexually harassing conduct was open and notorious.

88. Plaintiff's two managers subjected Ms. Hall to sexual harassment for which Defendant is liable.

89. At all times relevant to this action, Defendant knew or should have known of the sexual harassment endured by Ms. Hall and the existence of a sexually hostile work environment, but it failed to take remedial action to protect Ms. Hall.

90. Instead, Defendant allowed a sexually harassing work environment to exist.

91. Defendant Employer's actions constitute unlawful and intentional gender discrimination in violation of Title VII of the Civil Rights Act, as amended.

92. Defendant Employer willfully and wantonly disregarded Ms. Hall's rights, and Defendant discrimination against Ms. Hall was undertaken in bad faith.

93. As a result of Defendant Employer's unlawful actions, Ms. Hall has suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII and the FLSA

94. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

95. This claim is asserted solely against Defendant Employer.

96. Ms. Hall engaged in protected activity under Title VII and the FLSA by complaining of sexual harassment/sexual assault, not being paid for her work off the clock.

97. Ms. Hall was terminated in retaliation for engaging in protected activity.

98. Defendant Employer's actions constitute unlawful retaliation in violation of Title VII and the FLSA.

99. Defendant Employer willfully and wantonly disregarded Ms. Hall's rights under Title VII and the FLSA.

100. Defendant Employer's retaliation against Ms. Hall was undertaken intentionally and in bad faith.

101. As a result of Defendant's unlawful actions, Ms. Hall has suffered lost compensation and other benefits of employment, significantly diminished

employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

## COUNT III
## SEXUAL ASSAULT

102. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

103. This action is solely asserted against Mr. Pritchett.

104. The above-described actions by Mr. Pritchett constitute sexual assault.

105. Mr. Pritchett willfully and wantonly disregarded Ms. Hall's rights when he sexually assaulted her.

106. Mr. Pritchett is liable to Plaintiff for the damages his sexual assault caused Plaintiff.

107. As a result of the harasser's unlawful actions, Ms. Hall has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

## COUNT IV
## NEGLIGENT RETENTION AND SUPERVISION

108. Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

109. This claim is asserted solely against Defendant Employer.

110. Defendant Employer failed to properly investigate the harassment Plaintiff complained about or to properly regulate its company workplace. Defendant Employer knew of both Plaintiff's supervisors' propensities, constructively knew, or in the exercise of reasonable care should have known of his propensities. Alternatively, Defendant Employer should have known of the danger of a sexual assault toward Ms. Hall.

111. As a result of Defendant Employer's unlawful actions, Ms. Hall has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

## COUNT V:
## FAILURE TO PAY OVERTIME UNDER THE FLSA

112. Plaintiff incorporates by reference paragraphs 1-111 of this Complaint as if fully set forth herein.

113. Plaintiff was employed by Defendant Employer in interstate commerce, using goods procured through interstate commerce.

114. A substantial portion of Plaintiff's work was related to the movement of information, and data between states, and therefore Plaintiff was employed by Defendant Employer in interstate commerce.

115. Throughout Plaintiff's employment, she worked more than 40 hours per week.

116. Plaintiff was not subject to an exemption from the overtime requirements of the FLSA.

117. Plaintiff was entitled, under the FLSA, to receive overtime pay at one and one-half times Plaintiff's regular hourly rates for all hours worked in excess of 40 hours per week.

118. Further, Plaintiff worked off the clock and she is entitled to her hourly rate for all hours work under 40 hours a week for which she was not compensated.

119. Defendant Employer failed to pay Plaintiff one-half times Plaintiff's regular hourly rates for all hours worked in excess of 40 hours per week as required by the FLSA.

120. Defendant Employer's failure to pay Plaintiff one and one-half times Plaintiff's regular hourly rate for hours worked in excess of 40 hours per week as required under the FLSA was a willful violation of the FLSA for Defendant Employer's pecuniary benefit.

121. As a direct and proximate result of Defendant Employer's failure to pay Plaintiff's overtime wages as required under the FLSA, Plaintiff has suffered lost wages.

122. Plaintiff is entitled to an award of liquidated damages in addition to her unpaid overtime wages because Defendant Employer's failure to pay overtime was willful.

### COUNT VI BREACH OF CONTRACT

123. Plaintiff incorporates by reference as if fully restated here, the preceding Paragraphs of Plaintiff's Complaint.

124. Defendant's failure to pay Plaintiff for all hours worked at the agreed hourly rates constitutes a breach of contract by Defendant of an agreement to pay Plaintiff for all time worked at an agreed hourly rate consistent with FLSA regulations.

125. Plaintiff is entitled to recover from Defendant breach of contract damages at her agreed hourly rate for all time worked.

WHEREFORE, Plaintiff demands a trial by jury and for the following relief:

(a)  a declaratory judgment that Defendant Employer has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act, as amended;

(b) an injunction prohibiting Defendant Employer from engaging in unlawful employment practices in violation of Title VII of the Civil Rights Act;

(c) full back pay from the date of Plaintiff's retaliatory termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) front pay to compensate Plaintiff for lost future wages, benefits, and pension;

(e) liquidated damages and compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f) punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for their conduct toward Plaintiff and deter them from similar conduct in the future;

(g) reasonable attorney's fees and costs;

(h) nominal damages, and

(i) other and further relief as the Court deems just and proper.

Respectfully submitted this 15th day of November 2021.

/s/ J. Stephen Mixon

                                                    J. Stephen Mixon
                                                    Georgia Bar No. 514050
                                                    steve@mixon-law.com
                                                    Attorneys for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard
Suite 150
Atlanta, Georgia 30349
Telephone: (770) 955-0100
Facsimile: (678) 999-5039